# EXHIBIT A

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| "outer, resilient catheter" (asserted Claim 1) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term consistent with how it is described and shown in the '268 patent and its prosecution history, and consistent with the term's ordinary definition in the context of catheters, e.g., a catheter that is able to return to its original shape when undistorted.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• Abstract ("… an outer resilient catheter having shape memory…")<br>• 4:21-23 ("The material of which outer catheter 11 is made, e.g. silastic, has sufficient shape memory to return to its original shape when undistorted.")<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC identifies one definition of "resilient":<br><br>"returning to the original form or position after being bent, compressed, or stretched." *See* dictionary.com. | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br>'268 Patent at Abstract; 2:18-40; 3:10-22; 3:39-43; 5:14-18; Figs. 1-2; Claim 1 at 6:66; Claim 14 at 8:28-29; Claim 13 at 8:14-28; Claim 18 at 8:43-53; Claim 24 at 9:17-21; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• Resiliency is the ability of a material to absorb or store energy, and there are several ways to measure resiliency, such as Young's modulus. The '268 Patent specification does not provide parameters within this modulus or any other mechanism to determine what amount of level or resiliency would be within or outside the scope of the claimed invention.<br>• The '268 Patent specification provides only that the outer catheter is made of a braided silastic or similar material to allow torque control and stiffness. There is no specification, however, as to the amount of torque control or stiffness, nor is there an adequate description of the physical properties of the corresponding materials. Braided silastic alone has many variations and those options are increased further when adding "similar material." Without further details, what constitutes a corresponding outer, resilient catheter and what does not is entirely subjective.<br>• It is also unclear whether "resilient" and "pliable" are meant to be the same or different characteristics as used in the '268 Patent.<br>• This ambiguity is further compounded when taken in light of the '268 Patent as a whole requiring specific actions or results when certain components, such as the inner catheter, interact with the outer catheter and that the outer catheter have sufficient "stiffness" to advance in the distal coronary sinus. |
| "shape memory" (asserted Claims 1, 13, 18, 24) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term consistent with how it is described and shown in the '268 patent and its prosecution history, and consistent with the term's ordinary definition in the context of catheters, e.g., a catheter that is able to return to its original shape when undistorted.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• Abstract ("… an outer resilient catheter having shape memory…") | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br>'268 Patent at Abstract; 2:18; 4:21-23; Claim 4 at 7:22; general lack of discussion of shape memory in specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• "Shape memory" in the medical device industry typically refers to properties exhibited by Nitinol or similar materials that can be deformed when cold but return to their pre-deformed shape when heated. The specification and prosecution history of the '268 Patent do not address whether this definition or some other is being reference by "shape memory."<br>• In addition to the standard use, "shape memory" could have numerous other definitions with respect to the double catheter disclosed in the '268 Patent: (i) reference to the return to its original shape after being subject to a significant force; (ii) reference to return to |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | • 4:21-23 ("The material of which outer catheter 11 is made, e.g. silastic, has sufficient shape memory to return to its original shape when undistorted.")<br><br>**Extrinsic Evidence**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | its original shape after being used for cannulation of a coronary sinus; and (iii) reference to the tendency to return to its original shape when used as part of the cannulation process.<br><br>• The ambiguity of the term is further complicated as there is no reference to whether this characteristic is measured or established based on properties exhibited inside or outside the patient. While one of skill in the art would likely infer that "shape memory" is in reference to properties exhibited inside the patient, Plaintiff argues that this need only apply outside showing the subjective and ambiguous nature of this term.<br><br>• This term is further unclear as this property of the catheter must be exhibited with an outer resilient catheter but no specifics are specified as to resiliency that permits the corresponding "shape memory" or whether this property must persist when the inner catheter is introduced to the system. |
| "hook shaped" (asserted Claims 1, 10, 13, 18, 24) | **Proposed Construction**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term consistent with how it is described and shown in the '268 patent and its prosecution history, and consistent with the term's ordinary definition in the context of catheters, e.g., a catheter that is able to return to its original shape when undistorted.<br><br>**Intrinsic Evidence**<br><br>• 4:8-10 ("As shown in FIG. 2, the hook-shaped distal end of the outer catheter...")<br>• Figs. 2 and 4<br><br>**Extrinsic Evidence**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | Indefinite under 35 U.S.C. § 112<br><br>**Intrinsic Evidence:**<br><br>'268 Patent at Abstract; 2:18-20; 2:29-30; 4:8-10; 4:21-23; Fig. 2; Claim 2 at 7:11 and 13; Claim 4 at 7:23, 7:34 and 7:40; Claim 8 at 7:50; general lack of specificity in the patent and prosecution history<br><br>**Extrinsic Evidence:**<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br><br>• The '268 Patent describes the shape of the double catheter in terms of angles and overall shape, including "hook shaped." There was no set definition in the industry circa 2000 regarding what constitutes a "hook shape." This remains the case today, and what constitutes a "hook shape" is subjective.<br><br>• The meaning of "hook shaped" is further complicated when real life aspects of a double catheter such as flexibility and positioning are added.<br><br>• The subjective nature of this term is further underscored when considered in reference to the other generic shape requirements of claims (j-shaped or question mark shaped) as those terms also are interpreted differently from person to person.<br><br>• The term is further problematic as these shape parameters are to be met based on certain curve and bend profiles, yet no corresponding definitions are provided to explain what falls within or outside the scope of these shapes. |
| "configured" (asserted Claims 1, 10, 13) | **Proposed Construction**<br><br>Plain and ordinary meaning in the context of the '268 patent. | Designed for a specific purpose; otherwise, indefinite under 35 U.S.C. § 112<br><br>**Intrinsic Evidence:**<br><br>'268 Patent at 2:19-20; 3:14-22; 5:14-18; 6:2-15; Claim 2 at 7:13-14 |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | A person having ordinary skill in the art would understand this term consistent with how it is commonly used.<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, some common definitions of "configured" include "to design or adapt to form a specific configuration or for some specific purpose," *see* dictionary.com, and "to set up for operation especially in a particular way." *See* merriam-webster.com. | **<u>Extrinsic Evidence</u>:**<br><br>Definition of "Configure," DICTIONARY.COM, https://www.dictionary.com/browse/configure?s=t (last visited May 30 2019): to design or adapt to form a specific configuration or for some specific purpose |
| "bend" (asserted Claims 1, 13, 18) | **<u>Proposed Construction</u>**<br><br>A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in the '268 patent and its prosecution history.<br><br>**<u>Intrinsic Evidence</u>**<br><br>In many instances, a bend is a non-linear section of the catheter. *See, e.g.*, bends 41, 42, and 43 in Fig. 2 and bends 61, 62, and 63 of Fig. 4. The embodiment of Fig. 2 indicates that a bend may be angular in nature, whereas Fig. 4 indicates that a bend may be a curve. The '268 patent further explains that, in some embodiments, the first bend may be 180°, i.e., straight. *See, e.g.*, the '268 patent, 4:26-31. In instances where the first bend may be 180°, the claims provide additional limitations that indicate as such, e.g., stating the range of the first bend is 130° to 180°, or specifically stating that the angle of the first bend is 180°. In contrast, claim 1 requires an outer catheter with at least one "curved bend," narrowing the scope of the term "bend" to exclude a 180° configuration. Claim 8, which depends from claim 1, states that the hook-shaped distal end of the outer catheter "comprises substantially straight segments spanning three bends." | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br><br>'268 Patent at 4:6-7; 4:8-19; 4:25-28; 6:19-30; 6:37-38; Figs. 1-2; Claim 4 at 7:22-23, Claim at 7:50-52; Claim 9 at 7:53-57; Claim 19 at 8:65-66, Claim 20 at 9:1-3; Claim 26 at 10:21-22; Claim 27 at 3-24; general discussion of bend throughout the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br><br>MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2002): to constrain or strain to tension by curving; to turn or force from straight or even to curved or angular;<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• One skilled in the art would generally understand the term "bend to mean a deviation from a straight, typically angled or curved portion between any two, straight segments." A "bend" does not include a straight portion without any such deviation, since that would be contrary to the standard and understood meaning of the term and thus would render it meaningless to one of skill in the art.<br>• The '268 Patent teaches that a "bend" can be 180º, a straight line, which render the term problematic. A bend of a 180° is mathematically impossible. This is because 180º is by definition a straight line, the diametric opposite of a bend. This mathematical principle is recognized in the specification of the '268 Patent itself.<br>• Since bend is defined to include 180° it is it impossible for one of skill in the art to determine the parameters of the claims which include the term "bend." Specifically, since a bend can be a straight line, there are an infinite number of "bends" in any part of the catheter. Thus, where one party sees only two bends, another may see more or less. This issue is illustrated directly by Plaintiff's application of the term in its contentions. |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | **<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | |
| "inner, pliable catheter" (asserted Claims 1, 13, 18, 24) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term consistent with how it is described and shown in the '268 patent and its prosecution history, and consistent with the term's ordinary definition in the context of catheters, e.g., easily bent, flexible.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 3:13-23 ("An inner catheter 12, which slides in and out of outer catheter 11, is constructed of a more pliable, soft material such as silicone. The combination of outer and inner catheters 11, 12 provides a number of advantages, including variability in the reach of the catheter, and outer catheter stiffness necessary for manipulation along with inner catheter softness, which permits safe cannulation of the coronary sinus and advancement of catheter 11 into the distal coronary sinus for purposes of support. It also allows the inner catheter 12 to conform to the torturous course of a coronary sinus.").<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC identifies two definitions of "pliable":<br><br>• "easily bent, flexible; supple," *see* dictionary.com,<br>• "supple enough to bend freely or repeatedly without breaking." *See* merriam-webster.com. | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br>'268 Patent at Abstract, 2:20-30; 3:11-22; 3:39-43; 5:14-18; 20-24; 5:28-30; Claim 4 at 7:24; Claim 10 at 7:59-62; Figs. 1-2; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• Pliable generally does not have specific meaning and thus needs specifics to allow one of skill in the art to understand the claim.<br>• The '268 Patent specification states that the "inner, pliable catheter" is "made of soft, pliable materials such as silicone." The "inner, pliable catheter" further has "no longitudinal braiding, which makes it extremely flexible and able to conform to various shapes." However, there is no basis provided for what amount of flexibility would be inside or outside the scope of "pliable." This is compounded by the reference that the inner catheter be "extremely flexible" as opposed to just flexible, as both extremely and flexible are terms of degree. The patent also fails to disclose the true amount of flexibility, i.e., what shapes the inner catheter should conform to, as certain ranges of flexibility may allow for negotiation of certain angles but not others.<br>• The specification adds further ambiguity as other components, made of the same or similar materials, use "pliable" in yet a different context. For instance, the specification states that the "[o]bturator 53 is preferably made of very pliable silicone…." (col. 5, lns. 28-30). Thus, the inner catheter must be "made of soft, pliable material such as silicone" but the obturator is made of "very pliable silicone." As such, there is no teaching in the patent and one of skill in the art has no basis to understand where pliable ends and begins as it relates to the inner catheter.<br>• This is further compounded by the remainder of the claims and the '268 Patent as a whole disclosure that require the inner catheter to conform, or as Plaintiff argues to change, the shape of the outer catheter. No guidance is provided as to what amount of pliability would be sufficient to meet these characteristics. |

<table>
<tr><th>Claim Term</th><th>NLC's Proposed Construction</th><th>St. Jude's Proposed Construction</th></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>"mechanism" or "mechanism operable from the proximal end of the outer catheter for changing the curvature of the distal end of the outer catheter" or "mechanism operable from a proximal end of the outer catheter for changing the curvature of the distal end of the outer catheter" (asserted Claims 1, 10, 23)</td><td><u>Proposed Construction</u><br><br>This limitation is not a means-plus-function limitation. Based upon the '268 patent and the prosecution history, a person having ordinary skill in the art would interpret this term as a structure for changing the curvature of the outer catheter that must be operable from the proximal end of the outer catheter.<br><br>To the extent the term is construed as a means-plus-function limitation, NLC agrees that the function is "changing the curvature of the distal end of the outer catheter."<br><br><u>Structure</u><br><br>As to structure, NLC the limitation should be construed as (1) a torque screw attached to a cable anchored close to the distal tip of the outer catheter; and (2) an inner guide catheter within the outer catheter; and equivalents thereof.<br><br>NLC and St. Jude appear to be in agreement as to the torque screw configuration.<br><br><u>Intrinsic Evidence (relating to inner catheter as a structure that changes the curvature of the outer catheter)</u><br><br>• 6:8-12 ("Inserting inner guide 52 without obturator 53 before cannulation straightens outer guide 51, i.e., makes the angle of the outer guide 51 shallower, allowing engagement of a lower origin of the coronary sinus.")<br>• 6:17-19 ("This three-part telescoping embodiment thus eliminates the need for a cable system to change the curvature of the catheter during manipulation.")<br>• Claim 10 ("The double catheter of claim 1, wherein the mechanism for changing the curvature of the hook shaped distal end comprises a portion of the inner catheter configured to reduce the curvature of the hook shaped distal end when inserted in the outer catheter.")<br>• Fig. 3 of the '268 patent, showing an embodiment that does not include a torque screw/cable configuration.<br>• Provisional Application, pg. 4, first paragraph ("Now subsequent manipulation is carred out in the left anterior bleak view. Counterclockwise torque is exerted on the CS catheter. At the same time, the inner catheter is gradually</td><td>This is a means-plus-function limitation, but is ultimately indefinite under 35 U.S.C. § 112 as set forth below in relation to the term "changing the curvature of the distal end of the outer catheter." To the extent this can be construed, it should be construed as:<br><br>Function: for changing the curvature of the distal end of the outer catheter<br><br>Structure: cable mechanism and corresponding equivalents disclosed in the specification<br><br><u>Intrinsic Evidence</u>:<br><br>'268 Patent at 2:28-30; 3:53-65; 4:8-19; 6:6-18; Claim 4 at 7:31-40; Fig. 2; Claim 4 at 31-40; general discussions of the various curves and shapes in the specification and prosecution history<br><br>Prosecution history at 61-62; 68; 70-71<br><br><u>Extrinsic Evidence</u>:<br><br>• See "changing the curvature of the distal end of the outer catheter"</td></tr>
</table>

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | withdrawn. Eventually, the catheter slips over the tricuspid annulus and because of the counterclockwise torque, pops into the proximal coronary sinus. In some instances, it may come to lie at the mouth of the proximal coronary sinus. In that instance, the inner catheter is gradually advanced until the coronary sinus is cannulated.")<br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | |
| "changing the curvature of the distal end of the outer catheter" (asserted Claims 1, 13, 23) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent. A person having ordinary skill in the art would understand this as changing the shape of the distal end of the outer catheter.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 6:8-12 ("Inserting inner guide 52 without obturator 53 before cannulation straightens outer guide 51, i.e., makes the angle of the outer guide 51 shallower, allowing engagement of a lower origin of the coronary sinus.")<br>• 3:61-65 ("Rotation of torque screw 29 causes cable 31 to be retracted, which changes the shape of the outer catheter 11 (making the hooked shape more pronounced as shown by the arrow) and counter-rotation does the opposite.")<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | Indefinite under 35 U.S.C. § 112 because "the curvature" lacks antecedent basis in addition to the grounds provided below.<br><br>**<u>Intrinsic Evidence</u>:**<br>'268 Patent at 2:29-30; 6:16-18<br><br>**<u>Extrinsic Evidence</u>:**<br>Expert testimony of Dr. Erdman to support St Jude's construction, similar but not limited to the following:<br>• The '268 Patent and claims identify numerous individual and collective curves. For instance, subject to the above issue with "bend" there are discussions of a first, second or third "bend" with certain parameters. Each of these is potentially a curve. In addition, there is discussion of various shapes with curved components such as "J-Shaped" or "hook shaped."<br>• Additionally, the patent and prosecution history identify a double catheter system with a specific purpose. Notably, to allow for calculated and intentional manipulation of the distal end from the proximal end. This is above and beyond the standard changes exhibited by the inherent physical properties of the double catheter system.<br>• This claim, however, discloses only the broad notion of "changing the curvature." But there is no guidance on the specific change or scope of change. Accordingly, any change, even an unwanted or tangential change, would suffice. This renders this language subjective as what constitutes a corresponding change in curvature.<br>• The claim additionally provides no context on whether this change should occur; presumably, it occurs as an intended consequence of the unit during the cannulation process as the import of the '268 Patent is to provide a mechanism for manipulation of the shape of the double catheter. But there is no guidance as to the tensile ratio or properties of the outer or inner catheter, and there is no basis to know the scope of change sought. Likely, there will be some inherent, negligible change in the system upon introduction of the inner catheter. As to the sought change to reach the proper destination in the coronary sinus, there is no guidance on how much or in what manner the change is effectuated. |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| "portion" (asserted Claim 10) | **Proposed Construction**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand the term "portion" of the inner catheter as it is commonly used, e.g., a part of the inner catheter. | A specific part of a whole<br><br>**Intrinsic Evidence:**<br>'268 Patent at 2:22-23; 4:11-12; 4:40, Fig. 2 at 44<br><br>**Extrinsic Evidence:**<br>Definition of "Portion," DICTIONARY.COM, https://www.dictionary.com/browse/portion?s=t (last visited May 30 2019): a part of any whole, either separated from or integrated with it |
| "reduce the curvature" (asserted Claim 10) | **Proposed Construction**<br><br>Plain and ordinary meaning in the context of the '268 patent. A person having ordinary skill in the art would understand this as requiring the inner catheter to have a portion that is capable of reducing the curvature, i.e., straightening out, the distal end of the outer catheter.<br><br>**Intrinsic Evidence**<br><br>• 6:8-12 ("Inserting inner guide 52 without obturator 53 before cannulation straightens outer guide 51, i.e., makes the angle of the outer guide 51 shallower, allowing engagement of a lower origin of the coronary sinus.").<br><br>**Extrinsic Evidence**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | This is indefinite as to "the curvature" under 35 U.S.C. § 112 as set forth above; however, to the extent it is not deemed indefinite, this means to reduce the radius of the corresponding curve when the device is positioned within a patient<br><br>**Intrinsic Evidence:**<br>'268 Patent at 2:31-40; 2:53-55; 3:55-65; Fig. 2; Claim 2 at 7:14<br><br>**Extrinsic Evidence:**<br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• This interpretation is consistent with the specification of the '268 Patent;<br>• In addition to the ambiguity as to the scope of "the curvature" addressed above, Dr. Erdman will explain that to one of skill in the art, "to reduce a curvature" means to reduce the radius of curvature there by reducing or making the curve smaller. This is consistent with the '268 Patent because manipulation and opening or increasing curvature is easy, indeed it has been done by an obturator historically. But to the extent the curve is sought to be reduced or tightened, that requires a specific mechanism like the cable mechanism. |
| "the method" (asserted Claims 11, 24, 25, 26, 27) | The method steps of claims 11 and 24 are not limited to the order listed. As a matter of logic, inserting the catheter into the coronary sinus must be performed first, and withdrawing the catheter once the lead has been implanted must be performed last. However, the intermediate steps do not necessarily need to be performed in the order stated. For example, advancing a guidewire through the catheter into a coronary sinus lateral branch vein may occur before or after advancing the inner catheter out of a front end opening of the | Method steps must be done in the sequence set forth in the claim. *See Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398-1400 (Fed. Cir. 2014) (steps of a method claim are construed to require an order when they recite an order or, as a matter of logic or grammar, require that steps be performed in an order) |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | outer catheter along the guide wire into the branch vein. For example, for one embodiment the '268 patent explains that in circumstances where the side branch "cannot be easily cannulated" an obturator may be used to guide the wire into the side branch. The '268 patent, 5:46-64. The obturator is positioned within the inner catheter, so in this particular instance (as shown in Fig. 7), the inner catheter is advanced into the lateral branch vein along with the obturator before the guide wire is advanced into the lateral branch vein. | |
| "the catheter" (asserted Claims 11, 24) | Catheter refers to the "double catheter" referenced in the preamble of claims 11 and 24. Accordingly, advancing a guide wire "through the catheter" means advancing the guide wire "through the inner and outer catheter." Similarly, "withdrawing the catheter" means "withdrawing the inner and outer catheter." | Indefinite under 35 U.S.C. § 112 for lacking antecedent basis; otherwise, the double catheter<br><br>**<u>Intrinsic Evidence</u>:**<br>'268 Patent at 3:3-5; Figs. 3, 7 and 8; 4:4-19; 5:55-63; Claim 15 at 8:31; Claim 16 at 8:34; Claim 17 at 8:36 |
| "resilient tube" (asserted Claims 13, 18, 24) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term consistent with how it is described and shown in the '268 patent and its prosecution history, and consistent with the term's ordinary definition in the context of catheters, e.g., a tube that is able to return to its original shape when undistorted.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• Abstract ("… an outer resilient catheter having shape memory…")<br>• 4:21-23 ("The material of which outer catheter 11 is made, e.g. silastic, has sufficient shape memory to return to its original shape when undistorted.")<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC identifies one definition of "resilient": | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br>'268 Patent at Abstract; 2:18-40; 3:14-22; 3:39-43; 5:14-18; Figs. 1-2; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• *See* "outer, resilient catheter"<br>• This term adds further complexity of what a "tube" is and how it differs from a catheter. There is no explanation of the difference, if any, between a tube and a catheter. |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | "returning to the original form or position after being bent, compressed, or stretched." *See* dictionary.com. | |
| "sufficient stiffness to permit advancement of the outer catheter into a distal coronary sinus" (asserted Claims 13, 18, 24) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this as requiring the outer catheter to be capable of advancement into a coronary sinus.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 3:10-21(The outer catheter may be made of "braided silastic or similar material to allow torque control and stiffness" to "permit[s] safe cannulation of the coronary sinus and advancement of the catheter 11 into the distal coronary sinus for purposes of support."<br>• 3:39-43 ("Outer catheter 11 has several functions. Because of its stiffness and torque, it can be manipulated in the right atrium to allow cannulation of the coronary sinus. Such stiffness also lends support to the pacing lead as it is introduced into the distal coronary sinus.")<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br><br>'268 Patent at 3:10-23; 3:39-43; 4:4-8; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• *See* discussion of "outer, resilient catheter," "inner, pliable catheter," and "shape memory"<br>• This claim term requires a specific characteristic of the outer catheter, namely that is sufficiently "stiff" to advance into a distal coronary sinus but again no parameters are provided on the requisite stiffness. This is problematic considering that one of skill in the art would know that every human body is different, and what is "sufficient stiffness" comes with added complexity when the age of a patient is factored in, such that the distal coronary sinus of a child is different than that of an elderly patient.<br>• Additionally, it is unclear what would constitute "sufficient stiffness" yet remain an "outer, resilient catheter" with "shape memory." These all are terms of degree and varying interpretation such that there is no reasonable or consistent basis for one of skill in the art to understand what falls inside or outside the bounds of this limitation. |
| "first bend" or "a first bend adjoining a straight, proximal portion of the outer catheter is in the range of 130º to 180º" (asserted Claims 13, 18, 25) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in the '268 patent and its prosecution history, meaning a bend adjoining a straight, proximal portion of the outer catheter that is in the range of 130° to 180°.<br><br>**<u>Intrinsic Evidence</u>** | Indefinite under 35 U.S.C. § 112; otherwise, the first deviation from the straight, proximal portion of the outer catheter wherein the internal angle formed by the straight segments adjacent the first bend is 130º to 180º when the catheter is in an undistorted state<br><br>**<u>Intrinsic Evidence</u>:**<br><br>'268 Patent at 4:10-13; 4:26-31; 6:21-30; Figs. 1-2; Claim 9 at 53-55; Claim 14 at 8:29; Claim 19 at 8: 65-66; Claim 26 at 10:21-22; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>Prosecution History at 72<br><br>**<u>Extrinsic Evidence</u>:** |

<table>
<tr><th>Claim Term</th><th>NLC's Proposed Construction</th><th>St. Jude's Proposed Construction</th></tr>
<tr><td></td><td>
<ul>
<li>4:10-13 ("First bend 41 adjoining a straight, proximal portion 44 of outer catheter 11 is in the range of about 130° to 180°, especially 130° to 175°.")</li>
<li>As explained above with respect to the term "bend," in some instances the first bend may be straight, measuring at 180°. See, e.g., the '268 patent, 4:26-31.</li>
<li>Fig. 2</li>
<li>The prosecution history discusses measuring bends in a catheter. See, e.g., N00481-83.</li>
</ul>
<u>Extrinsic Evidence</u>
NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations.
</td><td>
Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:
<ul>
<li>See "bend", since bend can be 180° there is no specific way to determine the first bend and there can be an infinite number of bends.</li>
<li>Additionally, there is no proper frame of reference for either the plane on which the bend exists or how the reference angles for the bend are measured, i.e., whether the degree of bend is measured by the inside or the outside angle.</li>
<li>This can be viewed in the prosecution history of the '268 Patent, p. 72, where one bend is measured from the outside angle, and another bend is measured from the inside angle. Thus, even as to the range excluding 180° there is no basis for one of skill in the art to determine whether a "bend" is within or outside the scope of this limitation.</li>
</ul>
</td></tr>
<tr><td>"a second, intermediate bend is in the range of 75º to 100º" (asserted Claims 13, 18, 25)</td><td>
<u>Proposed Construction</u>
Plain and ordinary meaning in the context of the '268 patent.
A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in the '268 patent and its prosecution history, meaning a bend between the first and third bends that is in the range of 75° to 100°.
<u>Intrinsic Evidence</u>
<ul>
<li>4:13-15 ("Second, intermediate bend 42 extends in a direction opposite bend 41 and is in the range of about 75° to 100°.")</li>
<li>Fig. 2</li>
<li>The prosecution history discusses measuring bends in a catheter. See, e.g., N00481-83.</li>
</ul>
<u>Extrinsic Evidence</u>
NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will
</td><td>
Indefinite under 35 U.S.C. § 112; otherwise, the next deviation from the first bend is located at the approximate midpoint between the first bend and the distal end of the catheter and has an internal angle formed by the straight segments adjacent the second bend in the range of 75º to 100º when the catheter is in an undistorted state
<u>Intrinsic Evidence</u>:
'268 Patent at 4:8-19; Figs. 1-2 and 4; Claim 9 at 7:55-56; general discussions of catheter physical properties and interactions in the specification and prosecution history
Prosecution History at 72
<u>Extrinsic Evidence</u>:
Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:
<ul>
<li>There is no frame of reference in the '268 Patent for the "second, intermediate bend" in terms of either the plane on which the bend exists or how the reference angles for the bend are measured, i.e., whether the degree of bend is measured by the inside or the outside angle.</li>
<li>This can be viewed in the prosecution history of the '268 Patent, p. 72, where one bend is measured from the outside angle, and another bend is measured from the inside angle.</li>
</ul>
</td></tr>
</table>

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | |
| "in a direction opposite the first bend" (asserted Claims 13, 18, 25) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 4:8-15 ("Second, intermediate bend 42 extends in a direction opposite bend 41 and is in the range of about 75° to 100°.")<br>• Fig. 2<br>• The prosecution history discusses measuring bends in a catheter. *See, e.g.*, N00481-83.<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | With an arc path counter-clockwise to the arc path of the first bend<br><br>**<u>Intrinsic Evidence</u>:**<br><br>'268 Patent at 4:8-19; Figs. 1-2 and 4; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br><br>• The figures of the '268 Patent indicate that "in a direction opposite the first bend" would be counter-clockwise as compared to the first bend. For instance, Fig. 2 at 41 and 42 teaches that the second bend is in a direction counter-clockwise to the first bend. |
| "a third bend nearest the distal end of the outer catheter in the same direction as the second bend is in the range of to 130° to 175°" (asserted) Claims 13, 18, 25) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in the '268 patent and its prosecution history, meaning a bend that is nearest the distal end of the outer catheter, with respect to the other two bends, that is in the range of 130° to 175°.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 4:13-15 ("Second, intermediate bend 42 extends in a direction opposite bend 41 and is in the range of about 75° to 100°.")<br>• Fig. 2<br>• The prosecution history discusses measuring bends in a catheter. *See, e.g.*, N00481-83. | Indefinite under 35 U.S.C. §112; otherwise, the next deviation from the second bend is the last deviation prior to the distal end of the outer catheter, has the same clockwise arc path as the second bend, and has an internal angle formed by the straight segments adjacent the third bend in the range of 130º to 175º as measured when the catheter is in an undistorted state<br><br>**<u>Intrinsic Evidence</u>:**<br><br>'268 Patent at 4:8-19; Figs. 1-2 and 4; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>Prosecution History at 72<br><br>**<u>Extrinsic Evidence</u>:**<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br><br>• There is no frame of reference in the '268 Patent for the "third bend" in terms of for either the plane on which the bend exists or how the reference angles for the bend are measured, i.e., whether the degree of bend is measured by the inside or the outside angle. |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | **Extrinsic Evidence**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | • This can be viewed in the prosecution history of the '268 Patent, p. 72, where one bend is measured from the outside angle, and another bend is measured from the inside angle. |
| "first bend equals 180°" (asserted Claims 14, 19, 26) | **Proposed Construction**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in the '268 patent and its prosecution history, meaning a bend adjoining a straight, proximal portion of the outer catheter that is straight.<br><br>**Intrinsic Evidence**<br><br>• 4:26-31 ("For example, for a normal size atria with a prominent Eustachian valve, outer catheter 11 may be substantially J-shaped with no first bend (bend 41=180°).")<br>• The prosecution history discusses measuring bends in a catheter. *See, e.g.*, N00481-83.<br><br>**Extrinsic Evidence**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | Indefinite under 35 U.S.C. § 112<br><br>**Intrinsic Evidence:**<br><br>'268 Patent at 4:10-13; 4:27-28; Claim 19 at 8:65-66; Figs. 1-2; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**Extrinsic Evidence:**<br><br>MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2002): to constrain or strain to tension by curving; to turn or force from straight or even to curved or angular<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br><br>• *See* "bend" |
| "substantially J-shaped" (asserted Claims 14, 19, 26) | **Proposed Construction**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in | Indefinite under 35 U.S.C. § 112<br><br>**Intrinsic Evidence:**<br><br>'268 Patent at 4:26-28; Figs 1-2; general discussions of catheter physical properties and interactions in the specification and prosecution history |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | the '268 patent and its prosecution history, meaning shaped like the letter "J".<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 4:26-31 ("For example, for a normal size atria with a prominent Eustachian valve, outer catheter 11 may be substantially J-shaped with no first bend (bend 41=180°).")<br>• The prosecution history discusses measuring bends in a catheter. *See, e.g.*, N00481-83.<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | **<u>Extrinsic Evidence</u>:**<br><br>Expert testimony of Dr. Erdman to support St Jude's construction, similar but not limited to the following:<br>• *See* "hook shaped"<br>• The '268 Patent describes the shape of the double catheter in terms of angles and overall shape, including "J-shaped." There was no set definition in the industry circa 2000 regarding what constitutes "J-shaped." This remains the case today, and what constitutes a "J-shape" is subjective.<br>• The meaning of "J-shaped" is further complicated as it need not only be "substantially" in the form of a J-shape, but it must also be somehow distinguishable from "hook shaped" or "substantially question-marked shape." Ultimately, these are subjective concepts that do not allow one of skill in the art to be certain that a particular design falls inside or outside the scope of the claim term. |
| "substantially question-marked shape" (asserted Claims 15, 27) | **<u>Proposed Construction</u>**<br><br>Plain and ordinary meaning in the context of the '268 patent.<br><br>A person having ordinary skill in the art would understand this term to be consistent with how it is described and shown in the '268 patent and its prosecution history, meaning shaped like the a question-mark.<br><br>**<u>Intrinsic Evidence</u>**<br><br>• 4:26-31 ("…whereas for large atria with a prominent Eustachian valve, it may be useful to make catheter 11 more in a question mark shape (shown inverted in FIGS. 1-2)..")<br>• Figs. 1 and 2<br>• The prosecution history discusses measuring bends in a catheter. *See, e.g.*, N00481-83.<br><br>**<u>Extrinsic Evidence</u>**<br><br>NLC believes the reliance on extrinsic evidence for construction of this term is unnecessary and improper. However, to the extent the Court is willing to consider | Indefinite under 35 U.S.C. § 112<br><br>**<u>Intrinsic Evidence</u>:**<br><br>'268 Patent at 4:29-31; Figs. 1-2; general discussions of catheter physical properties and interactions in the specification and prosecution history<br><br>**<u>Extrinsic Evidence</u>:**<br><br>Expert testimony of Dr. Erdman with respect to this term, including but not limited to the following concepts:<br>• *See* "hook shaped" and "substantially J-shaped"<br>• The '268 Patent describes the shape of the double catheter in terms of angles and overall shape, including "hook shaped." There was no set definition in the industry circa 2000 regarding what constitutes "substantially question-marked shaped." This remains the case today, and what constitutes a "substantial question mark" is subjective.<br>• The meaning of "question-mark shaped" is further complicated as it need only be "substantially" this shape but this is somehow distinguishable from "hook shaped" or "J-shaped." Ultimately, these are subjective concepts that do not allow one of skill in the art to be certain that a particular design falls inside or outside the scope of the claim term. |

| Claim Term | NLC's Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| | extrinsic evidence, NLC designates Dr. Imran Niazi, who will explain that the above intrinsic evidence citations and address St. Jude's arguments and citations. | |