UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Niazi Licensing Corporation, | Case No. 17-cv-5096 (WMW/BRT) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| St. Jude Medical S.C., Inc., | |
| Defendant. | |

---

This patent-infringement matter is before the Court on the parties' cross-motions for summary judgment. (Dkts. 180, 184.) For the reasons addressed below, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

## BACKGROUND

Plaintiff Niazi Licensing Corporation (NLC) owns United States Patent No. 6,638,268 (the '268 Patent), which pertains to a catheter system that can be inserted into the coronary sinus of the heart. This catheter system allows medical professionals to administer fluids and introduce pacing leads to the coronary sinus. Although the use of catheters was known in 2003 when the '268 Patent issued, the '268 Patent describes an invention that, based on its structure and shape, purportedly is better suited for "use in the coronary sinus, especially in patients suffering from congestive heart failure." The '268 Patent claims a double catheter system with an "outer, resilient catheter having shape

memory and a hook-shaped distal end" and an "inner, pliable catheter slidably disposed in the outer catheter." The patent also claims methods of using the catheter system.

NLC commenced this patent-infringement action against Defendant St. Jude Medical S.C., Inc. (St. Jude), on November 13, 2017. NLC alleges that St. Jude has indirectly infringed the '268 Patent by inducing its customers—namely, medical professionals—to infringe the '268 Patent. Only a single method claim remains in dispute in this lawsuit: Claim 11 of the '268 Patent, which claims a series of steps for "using a double catheter." In its entirety, Claim 11 provides as follows:

> **11.** A method for placing an electrical lead in a lateral branch of a coronary sinus vein using a double catheter including an outer catheter and an inner catheter slidably disposed inside the outer catheter, comprising:
>
> inserting the catheter into the coronary sinus;
>
> advancing a guide wire through the catheter into a coronary sinus lateral branch vein;
>
> advancing the inner catheter out of a front end opening of the outer catheter along the guide wire into the branch vein;
>
> inserting the lead through the outer and inner catheters to a target location in the branch vein; and
>
> withdrawing the catheter leaving the lead in the branch vein.

In its October 21, 2019 claim construction order, the Court construed "the catheter" to mean "the double catheter" and held that "Claim 11 is infringed only when the steps are performed in the order listed."

2

The parties now cross-move for summary judgment. NLC argues that it is entitled to summary judgment in its favor on the issues of infringement, St. Jude's invalidity defenses, and St. Jude's challenge to NLC's entitlement to damages that accrued before the inventor assigned the '268 Patent to NLC. According to NLC, this matter should proceed to trial only on the issues of willful infringement and damages. St. Jude argues that it is entitled to summary judgment in its favor as to infringement and, in the alternative, contends that NLC cannot obtain pre-assignment damages as a matter of law.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on

the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

### I.  Infringement

NLC and St. Jude cross-move for summary judgment as to St. Jude's alleged infringement of Claim 11 of the '268 Patent. A finding of infringement of a method claim requires that "each and every step of the method or process was performed." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013). By contrast, summary judgment of non-infringement is appropriate if, after resolving all reasonable factual inferences in favor of the patentee, "no reasonable jury could find infringement." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130 (Fed. Cir. 2011).

It is undisputed that St. Jude does not itself perform the patented medical procedure. Instead, NLC alleges that St. Jude has indirectly infringed Claim 11 of the '268 Patent by inducing its customers—namely, medical professionals—to practice the patented method via St. Jude's product instructions and marketing materials. "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)

4

(citation omitted). The Court addresses, in turn, the issues of direct infringement and St. Jude's knowledge and intent.

### A.     Direct Infringement

Liability for the inducement of patent infringement "may arise if, but only if, there is . . . direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (internal quotation marks and alterations omitted). "A method patent claims a number of steps," and a method patent "is not infringed unless all the steps are carried out." *Id.* "Direct infringement of a method claim can be based on even one instance of the claimed method being performed." *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012). But a defendant "cannot be liable for inducing infringement" if the "performance of all the claimed steps cannot be attributed to a single person." *Limelight Networks*, 572 U.S. at 923.

This Court previously held that Claim 11 of the '268 Patent is infringed only if the steps of the patented method are performed in the order listed. As such, to be entitled to summary judgment of infringement, NLC must prove that St. Jude induced a single person to actually perform every step of Claim 11 in the exact order that those steps are listed in the '268 Patent. *See Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398–99 (Fed. Cir. 2014). Conversely, if NLC fails to prove that any one step of the method was not so performed, St. Jude is entitled to summary judgment of non-infringement. *See Aristocrat Techs.*, 709 F.3d at 1362; *cf. Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016).

NLC first contends that St. Jude's experts have admitted that direct infringement has occurred. In support of this argument, NLC relies on the following statement from the rebuttal report of St. Jude's damages expert, Dr. Mohan Rao: "In fact, based on my discussion with [St. Jude's technical expert] Dr. [David] Benditt, I understand that in practice, physicians utilize the method as listed in Claim 11 of the '268 patent less than 1 percent of the time." But for at least two reasons, this evidence is insufficient to satisfy NLC's burden to prove infringement. First, the statement in Dr. Rao's expert report is hearsay within hearsay and, therefore, inadmissible in evidence. *See Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F. Supp. 2d 886, 902–03 (D. Minn. 1999) (observing that "testimony of a witness that another individual told him or her" a particular statement "is inadmissible hearsay"); *Multi-Tech Sys., Inc. v. Hayes Microcomputer Prods., Inc.*, 800 F. Supp. 825, 844 (D. Minn. 1992) (observing that plaintiff "may not rely solely on inadmissible hearsay" to prevail on summary judgment).[1]

Second, even if Dr. Rao's statement were not inadmissible hearsay, it is inadmissible for another reason: namely, because it clearly reflects a hypothetical assumption, which is unfounded speculation. The purpose of Dr. Rao's rebuttal expert

---

[1] NLC contends that Dr. Rao's statement is not hearsay, pursuant to Rule 801(d)(2)(B), Fed. R. Evid., which provides that a statement is not hearsay if the statement "is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true." To be admissible under this rule, "the Court must determine, by a preponderance of the evidence, that a reasonable jury could properly find Defendant adopted the [statement] as an admission." *Cowden v. BNSF Ry. Co.*, 980 F. Supp. 2d 1106, 1119 (E.D. Mo. 2013). The record in this case does not establish that St. Jude "adopted or believed to be true," as a factual admission of liability, the statement from Dr. Rao's report on which NLC relies. To the contrary, St. Jude has consistently maintained that it has *not* infringed the '268 Patent.

report is to opine as to the extent of NLC's recoverable damages *assuming* that NLC were to prove infringement, which is not an uncommon practice. *See, e.g., Sys. Dev. Integration v. Comput. Scis. Corp.*, 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012) ("It is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion. To hold otherwise would be illogical."). Neither Dr. Rao nor Dr. Benditt purport to have either personal knowledge or data from which they have concluded that direct infringement of Claim 11 of the '268 Patent has occurred. Instead, the statement in Dr. Rao's report reflects Dr. Benditt hypothesizing as to the possibility of infringement occurring, which cannot demonstrate infringement.[2] *See ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313–14 (Fed. Cir. 2007) (observing that hypothetical instances of infringement cannot establish liability, which requires evidence of "specific instances of direct infringement" or that defendant's product "necessarily infringes"). To hold otherwise would permit a patentee to satisfy its affirmative burden of proof any time an accused infringer denies infringement liability but attempts to mitigate potential damages by offering, in the alternative, a rebuttal expert opinion on the issue of damages

---

[2] In addition to being speculative, Dr. Benditt's alleged statement (as paraphrased by Dr. Rao) that "physicians utilize the method as listed in Claim 11 of the '268 patent less than 1 percent of the time" cannot establish infringement for at least two other reasons. First, use of the patented method "less than 1 percent of the time" includes the possibility that the patented method is never used. Second, nothing in Dr. Benditt's alleged statement establishes a connection between St. Jude and any use of the patented method. Indeed, Dr. Benditt's speculation that the patented method might be used "less than 1 percent of the time" does not suggest that *St. Jude's customers*, using *St. Jude's written instructions*, are among those rare physicians who might use the patented method. As such, even if this evidence were not purely speculative double hearsay, this evidence would be insufficient to satisfy NLC's burden to prove that St. Jude induced at least one of its customers to infringe Claim 11 of the '268 Patent.

7

based on an assumption of liability. Such a result would be illogical and contrary to the law, common sense, and common practice. *See, e.g.*, *Sys. Dev. Integration*, 886 F. Supp. 2d at 882. Because the expert statements on which NLC relies are inherently hypothetical and speculative, such evidence is insufficient to prove direct infringement.[3]

NLC next argues that the written instructions St. Jude provides to end-users of its catheter products are circumstantial evidence of direct infringement. "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands*, 501 F.3d at 1313. "Hypothetical instances of direct infringement are insufficient to establish . . . indirect infringement," and the "mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent." *Id.* at 1313–14 (internal quotation marks omitted).

It is true that a patentee may prove infringement using circumstantial evidence. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012). But the "[c]ircumstantial evidence must show that at least one person directly infringed an asserted claim during the relevant time period." *Id.* Such evidence is insufficient if it merely shows that the defendant's product is "capable of" infringing and the defendant's "user manuals simply described how to use the product in an infringing manner." *Id.* at 1365. Instead, to prove direct infringement through circumstantial evidence when a

---

[3]   NLC contends that Dr. Rao's statement is *not* speculative because he prefaces the statement with the phrase "[i]n fact." Simply put, it is absurd to argue that beginning a sentence with a figure of speech such as "in fact" converts any speculation that follows into non-speculative evidence. NLC's argument lacks merit.

defendant has sold products that merely are *capable of* infringing, the patentee must present evidence that "the accused infringer designed its products to practice the claimed invention and instructed its customers to use the accused product in an infringing way." *Id.* (observing that defendants "go beyond *describing* the infringing mode; they *recommended* that customers use the infringing mode" (emphasis added)). Such instructions must evince the defendant's "intent to *encourage* infringement," and "[m]erely describing" an infringing use "is not the same as recommending, encouraging, or promoting an infringing use, or suggesting that an infringing use should be performed." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (internal quotation marks, alterations, and citations omitted). Accordingly, to prevail, NLC must present evidence that St. Jude affirmatively instructs, encourages, or recommends that its customers use its products to perform the steps of Claim 11 in the order that those steps are listed in the '268 Patent.

Claim 11 includes five steps:

> [1] inserting the catheter into the coronary sinus;
>
> [2] advancing a guide wire through the catheter into a coronary sinus lateral branch vein;
>
> [3] advancing the inner catheter out of a front end opening of the outer catheter along the guide wire into the branch vein;
>
> [4] inserting the lead through the outer and inner catheters to a target location in the branch vein; and
>
> [5] withdrawing the catheter leaving the lead in the branch vein.

The Court next addresses, in turn, NLC's evidence as to each of these five steps.[4]

### 1. Step 1

The first step of Claim 11 is "inserting the catheter into the coronary sinus." The Court previously construed "the catheter" to mean "the double catheter"—*i.e.*, both the inner and outer catheter. NLC contends that St. Jude induces its customers to perform this step in its written instructions by directing users to "[i]nsert the inner catheter into the outer guide catheter." But prior to this instruction, St. Jude's written instructions direct users to "[f]ollow normal accepted practice for . . . outer guide catheter insertion." This instruction indicates that the outer catheter should be inserted *before* the inner catheter is inserted rather than inserting both catheters simultaneously. This is inconsistent with the claimed method as construed by the Court. Therefore, NLC's evidence does not establish that St. Jude instructed customers to perform the first step of the Claim 11 method.

### 2. Step 2

The second step of Claim 11 is "advancing a guide wire through the catheter into a coronary sinus lateral branch vein." According to NLC, St. Jude instructs users to perform this step by directing users to, "[i]f desired, insert a guidewire . . . through the inner catheter lumen into the branch vein." But Claim 11 requires performing this step *before* advancing the inner catheter into the branch vein. In contrast, St. Jude's

---

[4] In opposing St. Jude's motion for summary judgment of non-infringement, NLC relies on an "abbreviated overview" of the same arguments and evidence that NLC relies on in its motion for summary judgment of infringement. As such, NLC's arguments and affirmative evidence of infringement are coextensive with its arguments and evidence seeking to counter St. Jude's non-infringement arguments.

instructions reference the use of a guidewire only *after* first directing users to "subselect[ ] the desired coronary sinus branch vein" when inserting the inner catheter. As such, St. Jude's written instructions do not follow the same order listed in Claim 11 and, therefore, do not instruct customers to infringe the patented method.

In addition, St. Jude's instructions do not recommend or encourage the use of a guidewire. Instead, the instructions provide that a physician *may* insert a guidewire "[i]f desired." Evidence that a defendant's "user manuals simply describe[ ] how to use the product in an infringing manner" without affirmatively *recommending* that customers do so is insufficient circumstantial proof of infringement. *Toshiba Corp.*, 681 F.3d at 1365 (observing as significant the fact that defendants "go beyond *describing* the infringing mode; they *recommended* that customers use the infringing mode" (emphasis added)). Notably, the record undisputedly establishes that St. Jude has sold significantly fewer guidewires than inner catheters, which further suggests that St. Jude does not recommend or encourage the use of a guidewire. Moreover, NLC's reliance on articles, instructions, and marketing materials produced by individuals and entities other than St. Jude is inapposite. Such evidence is immaterial because it has no relevance to whether *St. Jude* recommended or encouraged infringement.

In summary, NLC's evidence does not establish that St. Jude instructed customers to perform the second step of the Claim 11 method because St. Jude's written instructions merely describe the use of a guidewire without recommending or encouraging such use,

and the written instructions are not consistent with the order in which the steps of the method are listed in Claim 11.

### 3. Step 3

The third step of Claim 11 is "advancing the inner catheter out of a front end opening of the outer catheter along the guide wire into the branch vein." As evidence of infringement, NLC first relies on testimony by St. Jude's technical expert that it "is desirable" to advance the inner catheter into a branch vein. But such testimony does not establish that St. Jude encouraged or recommended doing so in a manner that infringes Claim 11 of the '268 Patent.

NLC also relies on the following excerpts from St. Jude's written instructions:

> 5. If desired, insert a guidewire (up to 0.035 inch (0.089 cm) diameter) through the inner catheter lumen into the branch vein.
>
> 6. If desired, advance the outer guide catheter over the inner catheter into the branch vein.

However, neither of these instructions describes advancing an inner catheter (1) out of the front end of an outer catheter, (2) along a guidewire, or (3) into a branch vein, all of which are required by step three of the patented method. To the contrary, as addressed above, St. Jude's written instructions describe advancing the inner catheter into a branch vein *before* the *optional* insertion of a guidewire.[5] And St. Jude's instructions clearly involve advancing "the outer guide catheter" into the branch vein, *not* advancing the

---

[5] Indeed, St. Jude's sixth step describes optionally advancing the outer catheter "over the inner catheter into the branch vein," which suggests that the inner catheter has previously been advanced into the branch vein.

12

inner catheter into the branch vein as required by the third step of Claim 11.  Moreover, St. Jude's instructions preface both the insertion of a guidewire *and* the advancement of the outer catheter into the branch vein with the phrase "[i]f desired."  As such, even if St. Jude's instructions correctly described the patented method (which they do not), these steps are neither encouraged nor recommended by St. Jude.[6]  Instead, these steps are merely described as steps that St. Jude's products are capable of performing.  This type of circumstantial evidence is insufficient to prove infringement.  *See Toshiba Corp.*, 681 F.3d at 1365 (distinguishing user manuals that "simply described" how to perform an infringing method from instructions that affirmatively "recommended" doing so).

For these reasons, NLC's evidence does not establish that St. Jude instructed customers to perform the third step of the Claim 11 method.

### 4. Step 4

The fourth step of Claim 11 is "inserting the lead through the outer and inner catheters to a target location in the branch vein."  According to NLC, St. Jude directs

---

[6]  NLC contends that "the only reason to use a .035 guide wire is to advance the inner catheter into the branch vein" and that "when a physician advances the outer catheter into the branch vein . . . the inner catheter and the outer catheter are manipulated in a telescoping fashion that includes advancing the inner catheter into the branch vein."  But even if it is true that a physician *could* interpret St. Jude's instructions in this manner, St. Jude's instructions for the use of its products do not describe, recommend, or encourage such an interpretation.  Significantly, "instructions that require one to look outside the label to understand the alleged implicit encouragement [to infringe] do not, without more, induce infringement."  *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1369 (Fed. Cir. 2017) (internal quotation marks omitted).  Moreover, St. Jude's instructions do not *recommend* use of a .035-inch guidewire.  The instructions merely indicate that, *if* a guidewire is used, the guidewire can be "up to 0.035 inch (0.089 cm) diameter" in size.

users to perform this step of the patented method in the eighth step of St. Jude's written instructions, which provides: "Introduce the lead through the inner catheter and into position in the branch vein. If desired, an over-the-wire technique may be used." Although this step of St. Jude's instructions indicates that use of an over-the-wire technique is optional, an over-the-wire technique is not required by the fourth step of Claim 11. As such, St. Jude's written instructions direct users to insert a lead through the outer and inner catheters to a target location in the branch vein, which is all that is required by the fourth step of Claim 11.

### 5. Step 5

The fifth step of Claim 11 is "withdrawing the catheter leaving the lead in the branch vein." Because this Court previously construed "the catheter" to mean "the double catheter" (*i.e.*, both the inner and outer catheter), this step of Claim 11 requires the inner and outer catheters to be withdrawn simultaneously. St. Jude's written instructions, however, describe *only* the removal of the inner catheter. NLC cites no evidence that St. Jude instructs, encourages, or recommends removing both the inner catheter and the outer catheter simultaneously.[7] Therefore, NLC's evidence does not establish that St. Jude instructed customers to perform the fifth step of the Claim 11 method.

The Court is mindful that a patentee may prove induced infringement with circumstantial evidence "that the accused inducer promoted the infringing use with

---

[7] To the contrary, the record includes the following testimony from St. Jude's technical expert, Dr. Benditt, about removing the inner and outer catheter simultaneously: "[N]obody does that. Well, nobody that I know of does that. Too hazardous to remove them in one step."

14

knowledge that such use directly infringes the patent claims." *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 976 F.3d 1347, 1352 (Fed. Cir. 2020).  But when, as here, an alleged infringer's instruction manuals do not "teach all of the steps of the claimed method together, much less in the required order," a patentee's circumstantial evidence of infringement "requires too speculative a leap to conclude that any customer actually performed the claimed method." *E-Pass Techs., Inc. v. 3Com Corp*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) (affirming summary judgment of noninfringement).  Such is the case here.  St. Jude's written instructions do not precisely describe all of the steps of the claimed method.  The instructions do not describe those steps in the order required by the patented method.  And the instructions do not affirmatively recommend each step of the patented method because some of the required steps are characterized as optional.  As such, the leap required to conclude from NLC's circumstantial evidence that any of St. Jude's customers actually performed the patented method is too speculative.  *See id.*

In summary, NLC's evidence does not demonstrate that St. Jude instructed, encouraged, or recommended the performance of each of the five steps of the patented method, either in the order listed in Claim 11 of the '268 Patent or otherwise.  Accordingly, the record contains insufficient evidence of direct infringement—a necessary element of NLC's induced-infringement claim.

      B.      **Knowledge and Intent**

In addition to proof that direct infringement occurred, an induced-infringement claim requires the defendant to know that the induced acts result in patent infringement.

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011). A plaintiff also must establish that it was the defendant's specific intent to encourage another's infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). Here, the parties' dispute primarily pertains to whether NLC has presented evidence that St. Jude specifically intended to encourage infringement of Claim 11.

NLC relies exclusively on St. Jude's written product instructions as circumstantial evidence of St. Jude's alleged intent to induce infringement. When evaluating whether product instructions evince the requisite intent to induce infringement, "[t]he focus is not on whether the instructions describe the mode of infringement, but rather on whether the instructions teach an infringing use of the device such that [the court is] willing to infer from those instructions an affirmative intent to infringe the patent." *HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 701 (Fed. Cir. 2019) (internal quotation marks omitted). Thus, when a plaintiff attempts to prove intent through a product label or instruction manual, courts must examine whether the instruction "encourages, recommends, or promotes infringement," because "[m]erely describing the infringing use, or knowing of the possibility of infringement, will not suffice." *Id.* at 701–02 (internal quotation marks and alterations omitted). In particular, when product instructions describe an infringing step but make clear that such step is optional, the instructions are insufficient to demonstrate an intent to encourage infringement. *See, e.g.*, *id.* at 702 (concluding that defendant's product instructions did "not encourage infringement" when they described as optional certain steps in the patented method).

As addressed above, St. Jude's written instructions do not encourage, recommend, or promote infringement for at least three reasons. First, St. Jude's instructions substantively differ from steps of the patented method in several ways, including the absence of any direction to insert or withdraw the inner and outer catheters simultaneously and the absence of any direction to advance an inner catheter out the front end of an outer catheter along a guidewire. Second, even if St. Jude's written instructions accurately described every step of the patented method, there is no evidence that St. Jude has instructed its customers to perform those steps in the precise order listed in Claim 11 of the '268 Patent. Third, several steps in St. Jude's written instructions are optional, which a physician may perform "[i]f desired." A patentee cannot demonstrate that a defendant specifically intended to induce infringement based solely on a defendant's instructions if those instructions expressly describe as optional the performance of a step that is necessary to infringe the patented method. *See id.* (affirming summary judgment of noninfringement because product instructions, which described steps of the patented method as optional, did not demonstrate that defendant intended to "encourage infringement"). Nor does such evidence create a material dispute of fact as to the intent element, even if the defendant has actual knowledge that some users of its product might be infringing the plaintiff's patent. *Id.*

In summary, to succeed on a claim of indirect infringement by inducement, NLC must prove both direct infringement by at least one person *and* that St. Jude knowingly induced infringement and possessed specific intent to encourage another's infringement.

17

As addressed above, NLC has failed to present evidence to support either of these two essential elements of its patent-infringement claim. Accordingly, NLC's motion for summary judgment of infringement is denied and St. Jude's motion for summary judgment of non-infringement is granted.

## II.     Invalidity and Damages

In the alternative, NLC argues that it is entitled to summary judgment on St. Jude's two invalidity defenses. Also, the parties dispute the scope of damages that NLC is entitled to recover. In light of the Court's conclusion that St. Jude is entitled to summary judgment of non-infringement, the Court declines to address these alternative arguments.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Plaintiff Niazi Licensing Corporation's motion for summary judgment, (Dkt. 180), is **DENIED**.

2. Defendant St. Jude Medical S.C., Inc.'s motion for summary judgment, (Dkt. 184), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: March 23, 2021                              s/Wilhelmina M. Wright
                                                   Wilhelmina M. Wright
                                                   United States District Judge