UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Niazi Licensing Corporation, | Case No. 17-cv-5096 (WMW/DJF) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| St. Jude Medical S.C., Inc., | |
| Defendant. | |

---

Before the Court is Plaintiff Niazi Licensing Corporation's ("NLC") motion to enforce settlement. (Dkt. 421). For the reasons addressed below, the Court grants the motion.

## BACKGROUND

NLC owns United States Patent No. 6,638,268 ("the '268 Patent"), which pertains to a catheter system that can be inserted into the coronary sinus of the heart. The '268 Patent also claims methods of using the catheter system.

NLC commenced this patent-infringement action against St. Jude in November 2017, alleging that St. Jude indirectly infringed the '268 Patent by inducing its customers—namely, medical professionals—to infringe the '268 Patent. After this Court issued its October 21, 2019 claim construction order, a single method claim remained in dispute: claim 11 of the '268 Patent, which claims a series of steps for "using a double catheter." The parties subsequently cross-moved for summary judgment. The Court concluded that NLC failed to present evidence to prove two essential elements of its patent-infringement

claim—namely, that at least one person directly infringed the patented method and that St. Jude knowingly induced infringement and possessed specific intent to encourage another's infringement. Accordingly, the Court denied NLC's motion for summary judgment of infringement and granted St. Jude's motion for summary judgment of non-infringement. NLC appealed.

While NLC's appeal was pending, St. Jude moved for attorneys' fees and costs, arguing that NLC knew or should have known that its patent-infringement claims lacked merit. In an October 25, 2021 Order ("Fees Order"), this Court granted St. Jude's motion in part. Although the Court rejected St. Jude's argument that sanctions were warranted under Rule 11, Fed. R. Civ. P., the Court found that "NLC engaged in bad-faith efforts to prolong this litigation" after October 2019 and "chose repeatedly to engage in improper tactics in an attempt to bolster the strength of its litigation position." Based on these findings, the Court concluded that NLC's conduct was "exceptional" under 35 U.S.C. § 285 and, consequently, that St. Jude is entitled to reasonable attorneys' fees and costs it incurred after October 2019. The Court also found that, because NLC's attorneys intentionally and recklessly disregarded their duties to the Court, NLC's attorneys will be jointly and severally liable to personally satisfy an award of reasonable attorneys' fees and costs, pursuant to 28 U.S.C. § 1927. The Court ordered the parties to file supplemental briefing as to the reasonable amount of attorneys' fees and costs that should be awarded. Neither party appealed the Fees Order.

On November 24, 2021, St. Jude sought an award of $753,110.12 in attorneys' fees and costs. NLC opposed St. Jude's requested amount, arguing that St. Jude seeks fees that

2

are not recoverable and that the fees sought are unreasonably redundant and excessive. After the parties had fully briefed the attorneys' fees issue, the United States Court of Appeals for the Federal Circuit issued a decision affirming in part, reversing in part, and remanding this case for further proceedings. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1342 (Fed. Cir. 2022). In particular, the Federal Circuit reversed this Court's construction of several claim terms in the '268 Patent and this Court's determination that several claims in the '268 Patent are invalid as indefinite. *Id*. at 1346. But the Federal Circuit affirmed this Court's determination that St. Jude was entitled to summary judgment of no infringement as to claim 11 of the '268 Patent. *Id*. at 1352-53. The Federal Circuit also affirmed this Court's exclusion of expert testimony and imposition of sanctions against NLC for discovery violations. *Id*. at 1353. In light of the Federal Circuit's decision, NLC moved to vacate this Court's Fees Order.

On August 26, 2022, this Court issued an order granting in part and denying in part NLC's motion to vacate and granting in part and denying in part St. Jude's request for attorneys' fees and costs. On September 22, 2022, NLC filed an appeal to the Federal Circuit on the August 26, 2022 order on motion for attorneys' fees.

The Federal Circuit dismissed NLC's appeal seeking to overturn sanctions imposed against them under 28 U.S.C. § 1927 in its patent infringement case. In an order dated December 28, 2022, the Federal Circuit held it lacked jurisdiction because the sanctions were not immediately appealable. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, No. 2022-2271, 2022 WL 17972175, at *1 (Fed. Cir. Dec. 28, 2022). Following Supreme Court precedent in *Cunningham v. Hamilton* County, 527 U.S. 198, 210 (1999) (affirming

dismissal for lack of jurisdiction over interlocutory appeal of a sanctions order against a party's attorney), the Federal Circuit found that sanctions against attorneys in ongoing district court cases cannot be appealed until after a final judgment on the merits. *Id.* The Federal Circuit rejected NLC's argument, that as non-parties, they could immediately appeal, determining there was no meaningful difference between the Rule 37 sanctions addressed in Cunningham and Section 1927 sanctions that would allow an interlocutory appeal. *Id.* at *2. Without a final judgment entered in the infringement case, the Federal Circuit dismissed the appeal for lack of jurisdiction. *Id.*

On April 20, 2023, the parties filed a letter with the Court stating that the parties have reached a settlement in principle. The magistrate judge ordered the parties to file a joint letter regarding the status of the settlement on or before June 22, 2023, if a stipulation of dismissal had not been filed by that date. On June 22, 2023, the parties filed a letter indicating that no progress had been made and that the matter should be reinstated. The letter stated that NLC intended to file the present motion to enforce settlement.

On September 26, 2023, NLC filed a motion to enforce settlement. St. Jude opposes the motion.

## ANALYSIS

A district court has inherent power to enforce a settlement agreement in a case pending before the court. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999); *Bergstrom v. Sears, Roebuck & Co.*, 532 F. Supp. 923, 934 (D. Minn. 1982). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming

4

litigation." *Bergstrom*, 532 F. Supp. at 934 (internal quotation marks omitted). "The settlement of lawsuits is 'greatly favored' and settlements will not be lightly set aside." *Unitarian Universalist Church of Minnetonka v. City of Wayzata*, 890 F. Supp. 2d 1119, 1124 (D. Minn. 2012) (*quoting Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 483 (Minn. Ct. App. 1990)).

Basic principles of contract law govern the enforcement of a settlement agreement. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). A district court has "considerable discretion" when determining the appropriate procedure for addressing a motion to enforce a settlement agreement, and a hearing is required "only if there are substantial questions of fact that are not already a matter of record." *Barry*, 172 F.3d at 1013.

Under Wisconsin law, which governs here, no agreement between the parties or their attorneys is binding unless made in writing and subscribed by the attorneys. Wis. Stat. § 807.05. The subscription requirement can be satisfied by the inclusion of the attorney's typed or printed name. *In re Est. of Johnson*, 709 N.W.2d 88, 91 (Wis. Ct. App. 2006).

For a contract to be enforceable, it must be definite and certain as to its material terms and requirements. *Paul R. Ponfil Trust v. Charmoli Holdings, LLC*, 935 N.W.2d 308, 311 (Wis. App. Sept. 18, 2019). Courts have recognized that, from a defendant's standpoint, the scope of the release is often the most material term in a settlement agreement. *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 448 F. Supp. 3d 898, 905-06 (N.D. Ill. 2019).

### I. Writing Requirement

NLC argues that the April 17, 2023 email from Judge Jones constitutes a writing containing the terms of the settlement agreement as required by Wis. Stat. § 807.05. The email states it contains "all [of] the material terms" of the parties' settlement. St. Jude's attorney, Mr. Shah, responded "Agreed" to the email, which NLC argues satisfies the subscription requirement under Wisconsin law.

St. Jude contends that the bullet point terms in Judge Jones's email were merely an initial proposal and St. Jude did not agree to those terms alone. However, as Mr. Shah responded "Agreed," the evidence shows that St. Jude agreed in writing to the terms in Judge Jones's email at the time.

The Court concludes that Judge Jones's April 17, 2023 email satisfies the writing and subscription requirements under Wis. Stat. § 807.05 based on the email itself and St. Jude's uncontested "Agreed" response in writing at the time.

### II. Subscription

NLC argues that St. Jude's attorney, Mr. Shah, responded "Agreed" to Judge Jones's April 17, 2023 email setting forth the settlement terms, which constitutes subscription under Wisconsin law. For this reason, NLC contends that Mr. Shah's "Agreed" email satisfies the subscription requirement in Wis. Stat. § 807.05.

St. Jude does not dispute that Mr. Shah's "Agreed" email satisfies the subscription requirement under Section 807.05 and Wisconsin law.

The Court concludes that Mr. Shah's "Agreed" email constitutes a subscription by St. Jude's attorney under Wis. Stat. § 807.05 and satisfies this requirement of the statute.

6

### III. Subsequent Letter

NLC contends that the April 20, 2023 joint letter submitted by the parties to the Court, stating the parties have agreed to settle this matter in principle, provides additional evidence confirming the settlement agreement. This letter, NLC argues, which was reviewed and signed by counsel for both parties, demonstrates their intent to be bound by the terms of the agreement memorialized in Judge Jones's April 17, 2023 email. St. Jude neither addresses the importance of the April 20, 2023 letter nor disputes that the letter shows both parties' intent to settle pursuant to the terms in Judge Jones's email.

The Court concludes that the April 20, 2023 letter jointly submitted by the parties further confirms their agreement to the settlement terms in Judge Jones's April 17, 2023 email. The letter provides additional evidence of both parties' intent to be bound by the terms of that agreement.

### IV. Material Terms

The parties dispute the meaning of Judge Jones's April 17, 2023 email. NLC argues that the language of the email establishes that St. Jude agreed the email contained all material terms of the settlement and was enforceable under Wis. Stat. § 807.05. The email states "[t]he parties agree that this is a writing containing all of the material terms of their settlement and is therefore fully binding and enforceable under Wis. Stat. 807.05." By responding "Agreed" to the email, NLC contends, St. Jude consented to the enforceability of the agreement under Wis. Stat. § 807.05.

7

St. Jude does not directly dispute that the email reflects the parties' intent for the agreement to be enforceable under Wis. Stat. § 807.05. St. Jude argues, however, that there was no mutual assent to the terms in the email.

The Court concludes that the plain language in Judge Jones's April 17, 2023 email, to which St. Jude agreed, reflects the parties' intent and agreement that the settlement terms were enforceable under Wis. Stat. § 807.05.

V.      **Covenant Issue**

NLC argues that the issue of whether to include a covenant not to sue in the settlement agreement arose after the mediation, when St. Jude sought to add the covenant when drafting the formal settlement document. A covenant not to sue was never discussed during the mediation, NLC contends, and it is not included in the email reflecting the parties' agreement that Judge Jones sent.

St. Jude responds that it required a covenant not to sue to be part of any settlement reached in mediation. However, St. Jude does not provide any declarations or evidence demonstrating that the covenant not to sue was negotiated at the mediation or included as a material term in Judge Jones's email.

Based on the record, the Court concludes that the issue of whether to include a covenant not to sue arose only after the mediation, when St. Jude sought to include it in the formal settlement document. The evidence does not support the conclusion that the covenant not to sue was negotiated as a material term during the mediation or that the parties agreed that it would be part of the settlement under the terms in Judge Jones's April 17, 2023 email.

### VI. Post-Agreement Disputes

NLC contends that any disputes that arose when drafting the formal settlement agreement during the period after the parties had reached an agreement on April 17, 2023 per Judge Jones's email, are not relevant to the issue of enforceability. The only question, NLC argues, as indicated by Judge Jones's email and the parties' conduct in confirming the agreement, is whether the parties entered into a binding agreement on April 17, 2023.

St. Jude disagrees. St. Jude identifies disputes over the formal settlement terms, particularly related to the covenant not to sue, as evidence that there was no meeting of the minds.

The Court concludes that the parties' disputes that arose later while drafting the formal settlement document do not undermine the binding nature of the settlement agreement reflected in Judge Jones's April 17, 2023 email. At issue is whether the April 17, 2023 email and the parties' conduct at the time establish that the parties entered into a binding settlement agreement on that date. The email and conduct are sufficient to demonstrate that a binding settlement agreement was formed between the parties on April 17, 2023. The subsequent disputes during the formal documentation process do not invalidate the original agreement reached on April 17, 2023.

### VII. Limited v. Material Terms

St. Jude contests whether it agreed to the "limited" terms contained in Judge Jones's April 17, 2023 email and maintains that St. Jude required any settlement to include a covenant not to sue. According to St. Jude, the email terms were merely an initial proposal that St. Jude rejected.

NLC points to the plain language of the email stating it contains "all material terms" of the settlement and St. Jude's unequivocal response, "Agreed." NLC contends the parties' email communication demonstrates St. Jude's acceptance of the terms in the April 17, 2023 email.

The Court concludes that the clear language of the April 17, 2023 email and St. Jude's "Agreed" response without any stated reservations, objectively demonstrate St. Jude's consent to the settlement terms in the email. St. Jude's subjective intent to require a covenant not to sue is not controlling where St. Jude's outward conduct objectively indicated consent. The Court, therefore, concludes that St. Jude agreed to the settlement terms contained in Judge Jones's April 17, 2023 email.

### VIII. Mutual Assent

St. Jude argues there was no mutual assent between the parties on the limited terms in Judge Jones's April 17, 2023 email that NLC now seeks to enforce. St. Jude contends the email terms were merely a proposal that it rejected.

In response, NLC points to St. Jude's email stating "Agreed" as objective evidence demonstrating St. Jude's assent to the terms in Judge Jones's email. St. Jude cannot now claim it did not agree to those terms when it clearly stated "Agreed" in response to the email, NLC contends.

St. Jude's unambiguous "Agreed" email statement in response to Judge Jones's terms objectively manifests St. Jude's assent to those settlement terms. St. Jude cannot now claim, without any evidence, that it secretly intended to reject those terms when St. Jude's outward conduct and written statement expressed agreement. The Court concludes

that there was mutual assent between the parties to the settlement terms contained in Judge Jones's April 17, 2023 email.

### IX.    Subsequent Resolutions

If the Court enforces any settlement, St. Jude argues, the settlement should reflect the mediator's subsequent resolution of disputes that arose during drafting of the formal agreement. Specifically, St. Jude contends that the Court should adopt the mediator's proposed revisions to the scope of the release.

NLC disagrees, arguing that the mediator's subsequent involvement was solely to assist the parties in drafting a formal document after they had reached an agreement. The mediator's proposed language is not binding without mutual assent of the parties, NLC asserts.

Upon review, the Court concludes that the mediator's proposed revisions to the formal settlement document do not alter the binding nature of the parties' original agreement in Judge Jones's April 17, 2023 email. There is no evidence that the parties mutually consented to amend or modify the original terms of the agreement. The mediator's proposed language for the formal document does not supersede the parties' prior agreement. The Court enforces the settlement based on the original terms in Judge Jones's April 17, 2023 email, not the mediator's subsequent proposals for the formal agreement draft.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Niazi Licensing Corporation's motion to enforce settlement, (Dkt. 421), is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 18, 2024                           s/ Wilhelmina M. Wright
                                                                                        Wilhelmina M. Wright
                                                                                        United States District Judge